**SUPERIOR COURT**
**OF THE**

**RICHARD F. STOKES**
*JUDGE*

**SUSSEX COUNTY COURTHOUSE**
**1 THE CIRCLE, SUITE 2**
**GEORGETOWN, DE 19947**
**TELEPHONE (302) 856-5264**


February 24, 2016


Wilmer L. Milton, Jr.
SBI# 00337177
James T. Vaughn Correctional Center
1181 Paddock Road
Smyrna, DE 19977

John W. Donahue, IV, Esquire
Department of Justice
114 E. Market Street
Georgetown, DE 19947

    RE: *State of Delaware v. Wilmer L. Milton,* Def. ID# 1103018831

           DATE SUBMITTED: November 17, 2015

Dear Mr. Milton and Mr. Donahue:

    Pending before the Court are a motion for a new trial as well as a motion for

postconviction relief[1] which defendant Wilmer Milton ("defendant" or "Milton") has filed. This

is my decision denying both motions.

---

    [1]Defendant filed his motion for postconviction relief pursuant to Superior Court Criminal Rule 61 ("Rule 61"). The version of this rule which applies is the one amended by the Superior Court's May 6, 2013 order. This version called for the appointment of counsel for an indigent defendant's first postconviction proceeding.

1

**Procedural History and Facts**

On March 21, 2011, DeShawn Blackwell ("the victim" or "Blackwell") was robbed and shot in his home. Although he survived the shooting, his lower body is paralyzed. Five people were arrested in connection with the robbery and shooting: Adriene Bennett ("Bennett"), Ron Roundtree ("Roundtree"), Treymen Atkins ("Atkins"), Darrell Trotter ("Trotter"), and defendant. All of those charged, except for defendant, entered into guilty pleas. Andre′ Beauregard, Esquire ("trial counsel") was appointed to represent defendant at his trial.

The evidence is viewed in a light most favorable to the State of Delaware ("the State") after defendant's conviction.[2] That evidence established the following. Roundtree, Atkins, Trotter and defendant decided to rob Blackwell. The role of Bennett, a friend of the victim, was to make sure that the victim's door was unlocked so that the four robbers could enter the residence. Trotter, Atkins and defendant drove from Dover to the Royal Farms outside Ellendale, Delaware. There, they met up with Roundtree, who drove them all to Akisha Scott's home. Her home was near the victim's home. As the four men were walking towards the victim's home, they came upon Bennett. Bennett recognized defendant and spoke to him.

Roundtree, Atkins, Trotter and defendant entered the victim's home. They robbed the victim and defendant shot the victim. Roundtree drove Atkins and defendant from the scene while Akisha Scott drove Trotter from the scene. Roundtree stopped on a back road between Ellendale and Milton and they waited for Tina Lopez to pick up defendant and Atkins. Lopez then drove defendant and Atkins to the Royal Farms in Ellendale. There, they met up with Trotter. Defendant, Atkins and Trotter then drove back to Dover.

---

[2]*Milton v. State*, 67 A.3d 1023, * 2 (Del. June 11, 2013) (TABLE).

Defendant advanced an alibi defense. He claimed that during the crimes, he was with his girlfriend, Dominique Parker, at the hospital in Milford.

Trial counsel hired an investigator to help find evidence to support defendant's version of events. The investigator determined defendant's girlfriend could not recall the exact time and date when defendant was with her nor could the employees of the hospital verify defendant was present at the hospital at the time of the crimes.

The following people testified that defendant, whom they personally knew, was at the scene that night: Bennett, Roundtree, Atkins, and Trotter. Defendant, who testified against the advice of counsel, testified that he was not at the scene. Defendant's testimony was not credible.

The jury convicted defendant on the charges of attempted murder in the first degree; robbery in the first degree; burglary in the first degree; possession of a firearm during the commission of a felony (3 counts); wearing a disguise during the commission of a felony; and conspiracy in the second degree.

Defendant appealed. Stephen W. Welsh, Esquire ("appellate counsel") represented defendant on the appeal. Three issues were raised on the appeal.

The first argument on appeal was that the trial court erred in not granting defendant a directed verdict on the charge of attempted murder in the first degree. The Supreme Court concluded "the record was replete with sufficient evidence from which a rational trier of fact could infer that Milton was the shooter" and that he intended to kill Blackwell.[3] The Supreme Court also concluded: "In addition to the identity of the shooter, there is also sufficient evidence

---

[3]*Id.*

3

from which a rational trier of fact could determine that the shooter intended to kill Blackwell."[4]

The second issue concerned side-bar conferences. The Supreme Court would not address this issue because defendant did not develop a sufficient record on appeal.

The third issue was whether the Trial Court abused its discretion in limiting the cross-examination of the victim's girlfriend. Defendant argued the Court erred by prohibiting him from impeaching the victim's in-court testimony through cross-examination of a later in-court witness. The Supreme Court ruled:

> Here, even if Milton could demonstrate that the trial judge abused his discretion in limiting the cross-examination of ... [the witness], he cannot demonstrate significant prejudice such that he was denied a fair trial. First, as previously stated, the record was replete with evidence from which a rational trier of fact could find Milton guilty beyond a reasonable doubt for the crimes charged. Second, the record reflects that Blackwell's credibility was seriously undermined at trial in other respects: Blackwell admitted he was a convicted felon, with two prior drug convictions; he admitted that he previously sold drugs; admitted that he had been in jail; and admitted that he was drinking alcohol and using cocaine on the night he was shot. In light of the evidence that had already been presented at trial to undermine Blackwell's credibility, Milton cannot demonstrate that he was deprived of a fair trial by the exclusion of this marginally relevant impeachment testimony.

The Supreme Court's mandate in this appeal was dated June 27, 2013.

On September 10, 2013, defendant timely filed his motion for postconviction relief. Several times, defendant requested he be allowed to represent himself.[5] Ultimately, Alexander Funk, Esquire ("Rule 61 Counsel") was appointed to represent defendant. Defendant filed several motions to disqualify Rule 61 Counsel. Rule 61 Counsel filed a motion for a new trial based upon affidavits submitted by Roundtree and Henry Boss ("Boss"). Roundtree supposedly

---

[4]*Id.* at *6.

[5]Docket Entries102 and 104.

4

recanted his testimony that defendant shot Blackwell while Boss made a statement regarding the case. Rule 61 Counsel also moved to withdraw on the grounds that defendant's claims were not valid and a search of the record did not establish that any other claims could be pursued.[6]

The Court scheduled a hearing. In the meanwhile, Roundtree submitted a letter dated May 3, 2015, in which he explained he wrote the recantation affidavit because his life was being threatened. Thereafter, Rule 61 Counsel moved to withdraw from presenting the motion for a new trial.

The Court held a hearing on the motions for new trial and postconviction relief on August 10, 2015.

At this hearing, defendant pressed his motion to disqualify Rule 61 Counsel's representation of him.[7] The Court ruled that there was no conflict of interest; there merely was a disagreement between defendant and Rule 61 Counsel as to the merits of his postconviction arguments. The Court found Rule 61 Counsel had represented defendant adequately and competently. The Court reviewed with defendant his rights to representation and verified that defendant was willingly waiving those rights. The Court concluded defendant's desire to proceed with the matter while representing himself was knowing, intelligent, and voluntary. The Court granted the motion to allow defendant to represent himself.

The hearing proceeded. Testimony was heard on the motion for a new trial and on the ineffective assistance of counsel claims.

---

[6]Defendant was upset by this motion; however, Mr. Funk was required to file this motion in the manner in which he filed it. The Court considers defendant's grounds for relief in any case.

[7]Transcript ("Trans.") of August 10, 2015 Proceedings at 3-15.

Thereafter, Roundtree sent another letter, dated October 21, 2015,[8] wherein he states the following: he did not know who shot Blackwell, Milton was not present at the shooting, and he testified falsely when he said Milton shot Blackwell. He followed that letter up with an affidavit, dated November 17, 2015,[9] again stating he did not know who shot Blackwell, Milton was not present at the shooting, and he testified falsely when he said Milton shot Blackwell.

**Motion for New Trial**

The motion for a new trial was based upon the recantation of Roundtree. The Court also heard from Henry Boss ("Boss").

Roundtree testified as follows.

He prepared an "Affidavit of Change of Statement" dated October 26, 2012, wherein he stated:

I, Ron S. Roundtree, being duly sworn, deposes and says:

On this Day that on 03/21/11 Wilmer L. Milton JR did not shoot DeShaun Blackwell in the back in the Laverty Lane Appartments [sic] I Ron Sullivan Roundtree shot Mr. Blackwell in the Back.[10]

Although he wrote this statement, it was not true.[11] He was pressured into writing it by acts of intimidation being committed against him in the prison which he felt occurred because he had been labeled a snitch for testifying against Milton. He testified that Milton did not pressure

---

[8]Docket Entry 156.

[9]Docket Entry 160.

[10]Exhibit C attached to Motion for New Trial, Docket Entry 121.

[11] Trans. of August 10, 2015 Proceedings at 19.

6

him directly; however, Milton's name was being brought up in connection with "a lot of things."[12] Roundtree also testified about a letter which was sent to him wherein a change in his testimony was sought. Roundtree verified that his statement that he did the shooting was made only because of threats and pressure and was not, in fact, true.[13] He wrote the affidavit so that he could "do ... [his] time in peace."[14]

As noted earlier, since that August hearing, Roundtree has sent another letter and another affidavit where he attempts to relieve Milton of culpability for shooting the victim. In the affidavit, he states:

> I am writing this ... to say that on August 10th 2015 of Milton's hearing I didn't lie when I testified saying that I wasn't the shooter. However at that hearing no one asked me if I really even knew who the shooter was... The answer is "No" I don't know who shot Blackwell that night. "No" Milton wasn't present that night and "Yes" I testified falsely at Miltons [sic] Trial!... I never seen Milton that night nor did I talk to Milton that night. I only said that Milton shot Blackwell because Trotter said Milton did it But Milton couldn't have done it because he wasn't there an [sic] the only other reason why I said that Milton did it was my P.d. "Richard Lyle" showed me confidentuale [sic] document from Milton [sic] file that I had "No" business seeing! An [sic] that Liguori told me had I gone to trial Milton was going to testify on me, an [sic] that I would be given life had I not pointed the finger at Milton. I got spooked an [sic] lied. I am sorry for lieing [sic]. Liguori told me that I was Golden if I did what he said an [sic] that I was only going to get 6 yrs! I asked Lyle an [sic] Liguori to interview Mr. Milton to see what he was going to say so that we could pre-pare [sic] a defence [sic] for my trial. I testified falsly [sic] an [sic] I made it known when I said that this was the first time that anybody has heard this story.[15]

---

[12]*Id.* at 30.

[13]*Id.* at 28.

[14]*Id.* at 35.

[15]Docket Entry 160. The October 21, 2015 letter and November 17, 2015 affidavit are nearly identical.

At the August hearing, Roundtree's father also testified to a letter that was sent to Akisha Scott, Roundtree's ex-girlfriend, which attempted to pressure her into testifying that Roundtree was the shooter. The letter's envelope, date stamped July of 2012, indicated the sender was Henry Boss.

Henry Boss ("Boss") testified at the motion for a new trial. He stated he did not send the above-referenced letter to Akisha Scott; anyone could have put his name on the return address portion of the envelope. Boss also testified with regards to his affidavit dated September 10, 2013.[16] In the affidavit, he reported that Roundtree told him that he, Roundtree, shot Blackwell and that Milton was at the hospital with his girlfriend when all this happened. Boss testified that Roundtree told him this when they were in the same unit together for a few days at Sussex Correctional Institution. It was established that Boss and defendant were housed in the same area during some period.

I do not find Boss's testimony credible. Consequently, I reject Boss's testimony regarding Roundtree's supposed statements.

I now turn to Roundtree's recantation. The defendant has the burden of proving, by clear and convincing evidence, the falsity of the trial testimony.[17] The Court employs the three-part test in *Larrison v. United States*[18] to determine whether to grant a new trial based on recanted testimony. As the Supreme Court noted in *Durham*,

---

[16]Exhibit C-4, attached to Docket Entry 91.

[17]*State v. James*, Def. ID# 1003006262, at 4, Witham, R.J. (Del Super. June 9, 2011), *aff'd*, 35 A.3d 418 (Del. Jan. 3, 2012) (TABLE).

[18]24 F.2d 82 (7th Cir. 1928).

*Larrison* held that a new trial motion should be granted if: (i) the trial court is reasonably well satisfied that the testimony given by a material witness is false; (ii) without the testimony, the jury might have reached a different verdict; and (iii) the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it or did not know of its falsity until after trial. [Footnote and citation omitted.][19]

I find that Roundtree's recantations are false. Milton, through his associates or friends, has continuously attempted to intimidate Roundtree into testifying that Milton was not present at the scene and that Roundtree, and not Milton, shot Blackwell. This intimidation started before the trial[20] and has continued.[21] It is because of this intimidation that Roundtree seeks to change his testimony.

My conclusion is that Roundtree's trial testimony was not false. The *Larrison* analysis ends there because the absence of one of the three prongs precludes the granting of a new trial.

The evidence was overwhelming that Milton was at the scene. Milton was the only person to testify he was not present and his testimony was not credible. Admittedly, the various witnesses made inconsistent statements about what happened that evening. However, the witnesses were cross-examined on their various versions of events. The jury had before it all the facts and inconsistencies and it decided that Milton participated in the plan to rob Blackwell and that Milton was the one who shot Blackwell with the intent to kill him. As the Supreme Court ruled, sufficient evidence supported that decision.[22]

---

[19]*Durham v. State*, 35 A.3d at *1.

[20]Transcript of March 14, 2012 Proceedings, B-85-6.

[21]Trans. of August 10, 2015 Proceedings at 17-39.

[22]*Milton v. State*, 67 A.3d at *2.

9

Based on what has occurred to date, the Court expects Milton will continue to pressure Roundtree and possibly other witnesses to recant. The Court will not consider any further recantations as a basis for a new trial.

For the foregoing reasons, the motion for a new trial is **DENIED**.

## Motion for Postconviction Relief

The Court granted postconviction counsel's motion to withdraw. It now considers defendant's numerous claims for postconviction relief.

Except for the ineffective assistance of counsel claims, all claims are procedurally barred either because they were not raised in the proceedings leading to the judgment of conviction or because they previously were considered on appeal. Furthermore, no exceptions to the procedural bars saves them.[23] However, because defendant pursues these barred claims through his

---

[23]The procedural bars in the applicable version of Rule 61 provide as follows:

*Bars to relief.* (1) Time limitation. A motion for postconviction relief may not be filed  more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.
  (2) Repetitive motion. Any ground for relief that was not asserted in a prior postconviction proceeding, as required by subdivision (b)(2) of this rule, is thereafter barred, unless consideration of the claim in warranted in the interest of justice.
  (3) Procedural default. Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows
  (A) Cause for relief from the procedural default and
  (B) Prejudice from violation of the movant's rights.
  (4) Former adjudication. Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter

ineffective assistance of counsel claims, I consider the merits of his claims. I do so because frankly, it is simpler this way. The exceptions to that decision are the argument in defendant's Claim 6 regarding insufficiency of evidence and a portion of the argument he makes in Claim 12 regarding off the record sidebar discussions. The Supreme Court heard and considered those claims and there is no basis for them to be heard or considered again.

**Prosecutorial Misconduct Claims**

Many of defendant's arguments are based upon his contention that his version of events, that he was not present at the scene, is the truthful version. He thus labels other witnesses' versions as false and he argues the prosecutor, relying upon those statements, was presenting false testimony and committing other wrongs. However, defendant's version of what occurred is not considered. The jury rejected that version and all arguments or claims based on defendant's version of events fail.

I turn to defendant's specific claims of prosecutorial misconduct.

* Prosecutorial misconduct, failure to correct witnesses and to alert defense

State prosecutor knowingly allowed his witnesses to testify falsley [sic] and done nothing to prevent this from happening, failed to correct his witnesses and failed to alert the defense of false testimony as required, thus state prosecutors' [sic] capitalize from the false testimony, violating defendants' [sic] constitutional rights.

---

barred, unless reconsideration of the claim is warranted in the interest of justice.
   (5) Bars inapplicable. The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

* Prosecutorial misconduct improper comments, statements, insertion of personal knowledge and flagrantly arguing off the record.

State prosecutor used a number of improper tactics constituting his conduct to be improper thus state prosecutors' improper misconduct violated the defendants' constitutional rights.

Defendant argues that the State knowingly entered false testimony of Roundtree. He argues that Roundtree testified he did not give any other statements to the police after March 21, 2011,[24] but discovery shows that Roundtree gave Detective King a statement on March 22 at 1907 hours (7:07 p.m.).

The shooting happened the evening of March 21, 2011. Detective King testified that Roundtree turned himself in to the Troop at 11:47 p.m. on March 21, 2011.[25] Everyone, including the defense, was aware there were three interviews of Roundtree and the interviews took place mostly on March 22, 2011.[26] The third interview took place on March 22, 2011, at 7:07 p.m. During the trial, the State and trial counsel extensively examined Roundtree and Detective King about these interviews.

The reference to the last interview being on March 21 clearly was a mistake. The Court rejects defendant's attempt make this statement into false testimony. The Court will not examine defendant's subarguments related to his premise that Roundtree testified falsely and the prosecutor failed to correct this error. This claim fails because it is frivolous.

Defendant's next argument concerns a dispute in the testimony regarding who smacked

[24]Trans. of March 15, 2012 Proceedings at C-166.

[25]Trans. of March 16, 2012 Proceedings at D-12 - 13; D-19; D-89; D-108-09; D-111; D-126-27.

[26]Transcript of March 15, 2012 proceedings at C-175.

12

the victim with a gun. The victim testified it was Roundtree. Roundtree testified it was Treymen Atkins. From that conflicting testimony, defendant argues the prosecutor violated the constitution by providing false testimony through Roundtree. He maintains the prosecutor knew this testimony was false because the prosecutor argued that Roundtree smacked the victim with the gun.

It is clear that the version of events the prosecutor chose to argue was that of Roundtree smacking the victim with the gun at or about the same time as defendant shot the victim. There was evidence for that version. There were various versions of the robbery and shooting. They were presented to the jury by way of direct testimony and cross-examination. The jury made the credibility determinations. The prosecutor had no duty to do anything in this situation. This claim fails because it is meritless.

Defendant argues that the prosecutor failed to correct Adriene Bennett's testimony.[27] Bennett testified she saw defendant outside of the victim's residence before the shooting. She also testified she was high on drugs at the time. **Defendant** contends she did not see him that night and the fact she was impaired prevented her from being able to identify anyone. He concludes her testimony was false and the prosecutor committed misconduct by presenting it and not pointing out that it was false.

The only basis for defendant arguing the testimony was false is that defendant says it is. This argument fails.

Defendant makes an argument about the prosecutor not correcting Detective King's testimony regarding cell phone records. Someone obtained some cell phone records. However, it

---

[27]Trans. of March 14, 2012 Proceedings at B-16-37.

13

is not established who did. The Detective was asked about them and replied that he never had seen them. He was also asked if anybody got cell phone records and he said no. Defendant argues that this was false testimony because "someone" obtained the records. The officer clearly testified he did not obtain the records. Absent defendant establishing the Detective himself obtained the cell phone records, he cannot say this testimony was false. This argument and the subarguments based upon it are meritless. This claim fails.

Defendant has advanced a multitude of claims of improper statements in the prosecutor's closing statements, including the offensive and frivolous argument based on his completely incorrect contention that the evidence does not show the victim was paralyzed. This Court has reviewed the prosecutors' closing arguments.[28] The prosecutor did not make any argument that was improper in any way. Not one of defendant's claims of improper argument during the closing is meritorious.

Prosecutorial misconduct, improper questioning

State prosecutor purpusly [sic] questioned the defendant about his and Ms. Lopez's sex in all attempts to attack the defendants [sic] character. This was not an [sic] rape prosecution thus any questions in volving [sic] or relating to sex are irrelevant to the case-in-chief, this line of questioning violated the defendants' [sic] constitual [sic] rights.

The question about defendant having sex with Tina Lopez was made during cross-examination to determine what relationship defendant had with her.[29] There was nothing improper about the question. No prosecutorial misconduct occurred. This claim fails.

State prosecutor used a prior mugshot [sic] of the defendant from six years ago

---

[28]Trans. of March 19, 2012 Proceedings at E-112-142; E-168-177.

[29]Trans. of March 16, 2012 Proceedings at D-182.

14

violating the defendants [sic] constitutional right to an [sic] fair trial thus trial Judge ordered State prosecutor to show Mr. Beauregard the date that was on the mugshot [sic] that was said to have been removed, thus the record do not reflect that this ever happened.

Defendant argues it was plain error to use a mug shot of defendant which was six years old and it was plain error for the Court to admit the photograph and/or for the prosecutor to enter it into evidence. The facts show that the older mug shot was not presented or entered into evidence.[30] Instead, the only mug shots presented and entered into evidence were from the date of defendant's arrest on March 22, 2011. This argument fails because it is based upon erroneous facts.

**Claims Against the Court**

Trial Judge failed to intervene and stop state prosecutors' [sic] flagrant misconduct, thus trial judges [sic] sole purpos [sic] of being apart [sic] of the trial is to assure or see to it that the defendants' constitutal [sic] rights are not purposly [sic] violated and that each of the attorneys' [sic] up holds [sic] their duty of proper conduct.

Specifically, defendant argues that the trial court had the obligation to *sua sponte* step in and correct what he labels misconduct by the prosecutor. The Court earlier concluded there was no prosecutorial misconduct. This claim has no merit and it fails.

**Claim Regarding Amended Superceding Indictment**

Trial Judge along with State prosecutor and defense attorney impermissibly allowed and participated in violating the defendants [sic] constitutional rights by amending the indictment after defendant had been properly indicted.

---

[30]Trans. of March 19, 2012 Proceedings at E-22-57.

15

Defendant argues the indictment was amended to omit a charge of possession of a deadly weapon by a person prohibited after the Grand Jury indicted him on that charge.

The count of possession of a deadly weapon by a person prohibited was severed pursuant to the agreement of counsel.[31] It was severed to prevent undue prejudice to defendant. Had defendant not testified and had the count remained as part of this case, then the Jury would have heard testimony about defendant's previous convictions. To prevent possible prejudice, the count was severed. Once it was severed, an amended indictment which reflected the omission of this charge was filed. This claim is meritless and fails. Any ineffective assistance of counsel claim based upon this claim fails, also.

**Claim Regarding Insufficient Evidence**

Insufficient evidence

State prosecutor failed to meet his burden of proving the element of "intentional" kill.

This is the same argument defendant advanced on appeal. The Supreme Court ruled against him, as noted earlier in this decision. The claim is barred pursuant to Superior Court Criminal Rule 61(i)(4). Defendant has not advanced any reason why the claim should be reconsidered in the interest of justice. Defendant has presented nothing to show the existence of any exceptions to the procedural bars. The claim fails.

---

[31]Trans. of March 13, 2012 Proceedings at A-7.

16

**Ineffective Assistance of Counsel Claims**

In assessing if trial counsel has been effective, this Court employs the two-part standard

set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Delaware's Supreme Court has

explained what this standard requires in *Shelton v. State*:[32]

> [Defendant] must ... prove that: (1) "counsel's representation fell below an
> objective standard of reasonableness," and (2) that counsel's actions were
> prejudicial to his defense, *i.e.,* "there is a reasonable probability that, but for
> counsel's unprofessional errors, the result of the proceeding would have been
> different." The prejudice prong of the *Strickland* standard requires "attention to
> whether the result of the proceeding was fundamentally unfair or unreliable."
> There is a strong presumption that defense counsel's conduct constituted sound
> trial strategy. Further, a defendant "must make specific allegations of actual
> prejudice and substantiate them." [Footnotes and citations omitted.][33]

Should the defendant fail to make concrete allegations of ineffective assistance of counsel and

fail to substantiate them, then the claim will be summarily dismissed.[34]


**1) Claims as to Appellate Counsel**

Ineffective assistance of appellate counsel

Appellate counsel failed to consult with the defendant about the factual claims
that need to be raised thus appellate counsel failed to raise the most important
claims.

Defendant argues appellate counsel was ineffective because he failed to raise various

issues on appeal. Specifically, he failed to raise prosecutorial misconduct claims; abuse of court's

---

[32]744 A.2d 465, 475 (Del. 2000), *cert. den.,* 530 U.S. 1218 (2000).

[33]*Accord Jefferson v. State*, 966 A.2d 348, 2009 WL 2523331, at *1 (Del. Feb. 4, 2009)
(TABLE); *Anker v. State*, 941 A.2d 1018, 2008 WL 187962 (Del. Jan. 9, 2008) (TABLE).

[34]*Younger v. State,* 580 A.2d 552, 556 (Del. 1990); *Pierce v. State*, 966 A.2d 348, 2009
WL 189150, * 1 (Del. Jan. 16, 2009) (TABLE).

discretion in failing to hear defendant's motion to disqualify trial counsel; abuse of trial judge's discretion in failing to stop state prosecutor's flagrant misconduct during trial; and ineffective assistance of counsel claims.

The prosecutorial misconduct claims he asserts appellate counsel failed to raise were that the prosecutor vouched for the credibility of government witness; the prosecutor indicated information not presented to the jury supported the testimony of the witness; and he bolstered the credibility of his witnesses by referring to matters outside the record. Because I conclude there was no prosecutorial misconduct, I reject defendant's contention that appellate counsel was ineffective in failing to raise these issues on appeal.

Defendant further argues that he filed a motion to disqualify counsel and appellate counsel's failure to raise this issue on appeal has prevented defendant from raising this issue in the postconviction matter. This Court notified defendant that he could discharge trial counsel but the Court would not appoint another attorney to represent him absent a statement from trial counsel that there was a conflict.[35] Defendant did not pursue this motion to disqualify counsel and trial counsel did not notify the Court of any conflict. No record was established for raising the issue of whether trial counsel should have been disqualified. Appellate counsel was not ineffective for not raising this issue on appeal. This claim fails.

Defendant next argues that appellate counsel failed to raise the issue of the trial judge's abuse of discretion with regard to the prosecutorial misconduct issues. Because I have concluded no prosecutorial misconduct occurred, this claim fails.

Finally, defendant argues appellate counsel failed to consult with defendant in a manner

---

[35]Docket Entry 42.

18

defendant considered sufficient before appellate counsel filed his brief. Defendant told appellate counsel the claims he wanted raised and appellate counsel said they would not be successful. In particular, with regard to the ineffective assistance of counsel claim, defendant felt it should be raised. Appellate counsel ignored defendant; defendant had to file his own brief on appeal.[36]

The claims advanced in this argument are too vague to consider but for the contention that appellate counsel did not pursue an ineffective assistance counsel claim on appeal. Except in very rare situations, the Supreme Court does not consider ineffective assistance of counsel claims on direct appeal.[37] Appellate counsel was not ineffective for not raising, on appeal, the issue of trial counsel's alleged ineffectiveness. Even if he was, defendant cannot show any prejudice in this case; all of his ineffective assistance of counsel claims are being heard in this proceeding. This claim fails.

**2) Claims as to Trial Counsel**

Defendant has stated numerous claims of ineffective assistance of counsel against trial counsel. I set forth his general arguments below.

\* Ineffective assistance of trial counsel, creation of unfair prejudice.

Defense attorney created photo's [sic] that were admitted into evidence without properly being established. Counsel claimed that the photo's [sic] were to establish that the defendant was not present with alledeged [sic] accomplices at

---

[36]The Supreme Court did not consider this brief and informed defendant that if he wished to proceed *pro se*, then he needed to file the appropriate motion. November 20, 2012 letter from LaToya S. Brady in *Milton v. State*, No. 343, 2012. Defendant never filed a motion to proceed *pro se*.

[37]*Desmond v. State*, 654 A.2d 821, 829 (Del. 1994); *Thelemarque v. State,* 2016 WL 556631, * 3 (Del. Feb. 11, 2016).

the so-called meeting place but the alledged [sic] accomplices were never identified in the photo's [sic] thus defense counsel violated the defendants [sic] constitutional rights by suggesting that the state use the photo's [sic] against the defendant.

* Ineffective assistance of trial counsel, failure to investigate

Defense attorney failed to investigate period, the defendant had not one single witness called to the stand in his behalf by counsel even though counsel was well aware that fact witnesses, corroborating witnesses, character witnesses and alibi witnesses were available. Counsels' [sic] lack of investigation violated the defendants [sic] constitutional rights.

* Ineffective assistance of counsel, failure to raise timely objections

Defense counsel abandoned the defendant and the defendants [sic] due process by failing to object to all of State prosecutors' flagrant improper misconduct during trial, thus defense counsel failure to raise timely objections violated the defendants [sic] constitutional rights.

* Ineffective assistance of counsel, failure to provide discovery, failure to apprise defendant of the status of the case, and failure to consult with defendant concerning defense strategy.

Defense counsel failed to provide the defendant with discovery simply because the defendant had wished to proceed pro se thus counsel did not like this so defense counsel just completely, purpusfully [sic] keep [sic] the defendant shut out from the facts and evidence in his own case, this was a clear violation of defendants [sic] constitutional rights.

This Court held a hearing on defendant's ineffective assistance of counsel claims. The Court limited the testimony to the following topics:

1) The handling of Deshawn Blackwell's testimony;

2) Whether Deshawn Blackwell's medical records contained any information which could have aided defendant's defense;

20

3) The photographs trial counsel introduced;

4) Counsel and the private investigator's pretrial investigation and results thereof; and

5) Trial counsel's contact with Dominique Parker, defendant's girlfriend and potential alibi witness.

Where there was a dispute of fact between trial counsel's testimony[38] and defendant's testimony, I accept trial counsel's testimony. I have concluded, based upon observations of defendant, that he does not always tell the truth. I find that trial counsel was truthful.

I find that trial counsel sent defendant discovery as well as all other information he had. I also find that trial counsel consulted with defendant. Although he may not have consulted with defendant for as long a period as defendant wanted, he consulted with him for a sufficient amount of time. Trial counsel was not ineffective with regards to communicating with defendant. Alternatively, defendant has failed to specify what prejudice resulted from the lack of discovery and/or limited periods of consultation.

Trial counsel had limited funds for conducting an investigation in this case. He hired a private investigator. Defendant's defense was that he was not present at the scene. The investigation was limited to supporting that contention. The investigation was not fruitful. The investigator could not locate anyone who could testify to defendant's alibi with certainty. Defendant has not named one person, with the exception of Dominique Parker, who might have testified on his behalf and in a manner which would have changed the outcome of the trial. With regards to Dominique Parker, trial counsel testified his investigator interviewed her and her testimony would not have been helpful. She could not provide solid alibi testimony. It was

---

[38]Trans. of August 10, 2015 Proceedings at 75-128.

reasonable not to call her to the stand. Thus, no witnesses were called to testify on behalf of defendant's alibi defense. Trial counsel's investigation was reasonable in light of the defense. Trial counsel's strategy not to call Ms. Parker was reasonable in light of her vague recollection. Trial counsel's strategy not to call any other witnesses was reasonable in light of the fact that none have been identified who could help defendant's case.

Trial counsel's strategy was to throw doubt on defendant's presence at the scene. The victim initially told the police that three men were present and he identified Roundtree as the shooter. That was helpful to defendant's contention he was not present at the scene. It was not perfectly clear whether the victim had been medicated at the time he made this initial statement. Nor was it clear whether the victim was under the influence of illegal drugs at this time. Trial counsel wanted that first statement to have been made while the victim was cognizant and not under the influence of any medicines or illegal drugs. He did not want to obtain the medical records and have them establish that the victim's first interview was made while he was under the influence of any drugs, legal or not. This was a reasonable and effective trial strategy. Trial counsel was not ineffective as to the victim's testimony and not obtaining his medical records.

Photographs of a man who resembled defendant but whom trial counsel and defendant maintained was not defendant are the basis for one of defendant's claims of ineffective assistance of counsel. The State obtained from Royal Farms video taken there on March 21, 2011. Detective King was unable to open this video. However, trial counsel was able to open it and to "screen grab" pictures of a man who resembled defendant. Trial counsel was confident the pictures were not of defendant because the height of the depicted person was not the same as defendant's and the clothing of the depicted person differed from that which defendant was said to have been

22

wearing on March 21, 2011. Trial counsel's strategy was that defendant could have been misidentified because someone who looked like him was at the Royal Farms during the pertinent time.[39] Trial counsel reviewed the photograph with defendant and defendant was agreeable to it being admitted. I conclude trial counsel's strategy regarding the pictures was reasonable under these facts.

Trial counsel felt the more confusion he created, the greater defendant's chance of not being convicted. Trial counsel's strategy was reasonable. He entered the trial where overwhelming evidence existed against defendant as a principal or accomplice. I find that trial counsel's representation was not ineffective.

Finally, I find that trial counsel strongly recommended that defendant not testify. Defendant refused to take this advice. Defendant's testimony that he was not present at the crime scene was not credible and he otherwise damaged himself by admitting to a serious and violent criminal history, selling drugs, teaching co-defendant Atkins how to sell drugs, and instructing Atkins on how to commit a robbery.

In conclusion, defendant has failed to establish ineffective assistance of appellate or trial counsel.

---

[39]Trans. of Aug. 10, 2015 Proceedings at 85-97. The transcript of these proceedings references the facts in this argument.

**Conclusion**

For the forgoing reasons, the Court denies defendant's motion for a new trial and it denies defendant's motion seeking postconviction relief.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Richard F. Stokes*

Richard F. Stokes

cc: Prothonotary's Office
    Andre′ M. Beauregard, Esquire
    Stephen W. Welsh, Esquire
    Alexander W. Funk, Esquire
    Thomas D. Donovan, Esquire
    Ronald D. Phillips, Jr., Esquire